UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Darren Gallant,
        Plaintiff

        v.                                  Case No. 11-cv-600-SM
                                            Opinion No. 2013 DNH 082
Jessica Gallant, Sandown Police
Department, William Pica,
Town of Hampstead,
Richard Chambers,
Daniel Jackman,
        Defendants


**O R D E R**

Plaintiff, Darren Gallant ("Darren"), filed this action in

state court against the Sandown Police Department and his

estranged wife, Jessica Gallant ("Jessica").  Defendants removed

the proceeding to this forum, invoking federal question

jurisdiction.  See 28 U.S.C. §§ 1331, 1441.  Plaintiff

thereafter filed an amended complaint, adding claims and naming

a Sandown police officer and the Hampstead Police Department and

two of its officers as additional defendants.

The summary judgment motions of Jessica Gallant and the

Sandown Police Department[1] and its officer are now before the

court.  See doc. nos. 31 and 33.  Plaintiff objects.

_____

[1] The Sandown Police Department is an agency of the Town of
Sandown, which is the real party in interest.  For simplicity's
sake, the court will refer only to the Sandown Police
Department.

## Standard of Review

When ruling on a motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir.1990).  Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence."  Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir.1996) (citations omitted).

Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).  The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that

proffered by the moving party.  See generally Fed. R. Civ. P.

56(c).  It naturally follows that while a reviewing court must

take into account all properly documented facts, it may ignore a

party's bald assertions, unsupported conclusions, and mere

speculation.  See Serapion v. Martinez, 119 F.3d 982, 987 (1st

Cir.1997).  See also Scott v. Harris, 550 U.S. 372, 380 (2007).

## Background

Darren and Jessica Gallant were married in 1997.  They

lived together in their home in Sandown, New Hampshire, from

1998 until 2009.  In August 2009, Jessica filed for divorce.  By

agreement, and then by court order, Jessica resided in the

Gallant home and Darren resided elsewhere during the pendency of

the divorce proceeding.

In a separate state court proceeding, Jessica sought and

obtained a Domestic Violence Protective Order ("DVPO") against

Darren, which was to remain in effect from August 2009 to August

2010.  Sandown police officers formally served Darren with the

DVPO.  Under the terms of the protective order, Darren was to

have no contact with Jessica, including by telephone, text, or

email.

In March 2010, the family court judge issued a temporary

order regarding custody of the Gallants' children.  The order

stated, among other things, that Darren and Jessica would "share

decision making of the two children . . . . and that they will
be able to have reasonable contact with each other regarding
parenting issues."   Doc. no. 31-7.   The court also stated that
"previously there was a [DVPO] in place, that is not the case
any longer."   Id.

In early April 2010, Darren brought the family court's
temporary order to Chief Joseph Gordon of the Sandown Police
Department.   Darren stated to Chief Gordon that there was no
longer a DVPO in effect and that he could, therefore, contact
Jessica as he wished.   Chief Gordon suggested that Darren speak
with the family court clerk to seek clarification.   He also
advised Darren that he could be arrested if he went to the
marital home because the DVPO still appeared "in the computer"
system as valid and effective.

Two days later, Darren met with the family court clerk,
who, according to Darren, told him that the DVPO was no longer
in place and advised him to keep the temporary order with him at
all times.   Around the same time, Darren's counsel filed a
"Motion for Explicit Orders" with the family court seeking a
clarification of the temporary order.   The motion acknowledged
that, although the temporary order appeared to lift the DVPO,
"[i]n reality, this does not appear to be the case."   Doc. no.
31-8.

On May 4, 2010, Jessica met with Corporal John Sable of the
Sandown Police Department and informed him that Darren had
contacted her numerous times by phone call and text, including
82 texts on a single day.  As recounted in defendants' statement
of facts (substantially unopposed by plaintiff), the following
events then unfolded:

> Corporal Sable spoke with Chief Gordon, who
> confirmed that the DVPO remained in effect.  Sable
> Aff. § 9.  Corporal Sable then prepared an affidavit
> detailing the facts to support the issuance of an
> arrest warrant for the Plaintiff for violation of a
> protective order pursuant to RSA 173-B:9. Id. The
> affidavit was presented to a Justice of the Peace, who
> reviewed and issued a warrant thereon. Id. and Exhibit
> B thereto. With the executed warrant in hand, Corporal
> Sable contacted the Hampstead Police Department and
> relayed to Sgt. Richard Chambers that he had an active
> arrest warrant for the Plaintiff for violation of a
> protective order and that the Plaintiff would be
> parked in the West Hampstead Post Office at 5:00 p.m.
> for an arranged child swap. Id. at ¶ 10.
>
> * * *
>
>
> The Plaintiff proceeded to Hampstead as expected.
> The Plaintiff states that, while waiting for Jessica
> to arrive with the children, he noticed two Hampstead
> cruisers arrive and position themselves on either side
> of the bank that is attached to the Post Office.  Pl.
> Dep. at 35. Feeling concerned, he decided to leave.
> Id. at 36.  As he began to move his truck, he says
> that one cruiser advanced and the officer got out and
> instructed him to stop the car and get out.  Id.
> According to the Plaintiff, the officer had his gun
> drawn.  Id.[2]  The Plaintiff complied and the officer
> holstered his gun.  Id.  He says [he was] then

---

[2] Plaintiff says that the officer "drew his weapon on the
Plaintiff."

handcuffed by one of the Hampstead officers.  Id. at
38.

        Moments later, Officer William Pica of the
Sandown Police Department arrived at the scene and
took custody of the plaintiff.  Pl. Dep. at 40;
Affidavit of William Pica ("Pica Aff.") attached
hereto as Exhibit 10 at ¶ 4.  According to the
Plaintiff, as they were en route to the Sandown Police
Station he stated that the handcuffs hurt.  Pl. Dep.
at 41.  The Plaintiff acknowledges that he did not
mention any discomfort until he was in Officer Pica's
cruiser and headed to Sandown.  Id. at 42, 65.  He
states that Officer Pica said he'd look at them when
he arrived at the station and that, true to his word,
Officer Pica removed them on arrival.  Id. at 42-43.

        The Plaintiff was booked and formally charged at
the police station.  Pica Aff. at ¶ 7.  He was then
transported to the Rockingham County Department of
Corrections to await arraignment pursuant to RSA 173-
b. Id.

Doc. no. 31-1, at 7-8.


Subsequent to the arrest, the family court clarified that

the DVPO "had never been dismissed, discharged, or modified" and

that it was to "remain[] in effect" until August 2010.  Doc.

nos. 31-14, 31-15, 31-16.  Prior to the DVPO's expiration,

Jessica moved to extend its duration for another year.  The

court granted the motion.

In August 2011, the DVPO expired.[3]  Worried that Darren, in

the absence of the DVPO, would come to her home, Jessica

contacted the Sandown police in November, and obtained a

---

[3] Jessica sought to extend the DVPO for another year, but
apparently the court failed to hold the mandatory hearing in the
time allowed by statute.

Trespass Notice against Darren.  Sergeant Wood of the Sandown

Police Department subsequently notified Darren of the Trespass

Notice and requested that he sign it.  Darren refused.

According to Darren's version of the facts, Sergeant Wood told

Darren that, "if he wanted to pick up his personal property"

from the marital home, "he would have to arrange for an officer"

to accompany him.  Pl. Br., doc. no. 16, at 6.  Darren

eventually returned to the home with Jessica's consent to

retrieve some of his personal belongings.

Darren filed this action in state court against Jessica

and the Sandown Police Department seeking an injunction against

enforcement of the Trespass Notice and monetary damages.  He

alleged state law conversion and violation of his federal due

process rights.  Defendants removed the proceeding to this

forum, invoking federal question jurisdiction.  See 28 U.S.C. §§

1331, 1441.  Plaintiff thereafter filed an amended complaint,

adding state and federal claims for false arrest, false

imprisonment, excessive force (assault and battery), and

malicious prosecution, relating to his arrest for violation of

the DVPO.  Plaintiff named Sandown police officer William Pica

and the Hampstead Police Department and two of its officers (the

"Hampstead Defendants") as additional defendants.

By order dated April 22, 2013, this court granted the
Hampstead Defendants' motion for summary judgment on all claims
relating to the arrest.  Doc. no. 43.  The court held that the
"police officers had effected a valid arrest of plaintiff
pursuant to an outstanding arrest warrant," and further found
that, "although the handcuffs may have been incorrectly applied
in some manner that caused plaintiff some transitory discomfort
for some ten minutes or so[,] . . . no medical treatment was
sought or required, no permanent injury of any kind is claimed,
and no evidence suggesting intention infliction has been
produced or referenced."  <u>Id</u>.  Accordingly, the court concluded
that the "[p]laintiff has not produced or pointed to any
evidence from which a jury could reasonably conclude that the
Hampstead defendants either effectuated an unlawful arrest, or
employed excessive force in arresting or detaining the
plaintiff."  <u>Id</u>.

The summary judgment motions of the remaining defendants
are now before the court.  Plaintiff's objection to entry of
summary judgment in Jessica's favor is limited.  In his brief in
opposition, plaintiff indicates that he "does not object to
summary judgment being entered in favor of . . . Jessica on
Plaintiff's claim of assault and battery or on the Plaintiff's
claims related to the Trespass Notice."  Pl. Partial Objection,

doc. no. 35, at 1.  What remain for the court's consideration

are (1) Section 1983 claims for unlawful arrest, false

imprisonment, and malicious prosecution against Jessica, Officer

Pica, and the Sandown Police Department;[4] (2) a Section 1983

claim for violation of procedural due process relating to the

Trespass Notice, as against the Sandown Police Department; and

(3) state law claims.[5]

**Discussion**

I.  <u>Section 1983 Claims for Unlawful Arrest and False
    Imprisonment</u>

     Plaintiff was arrested and detained on the charge of

knowingly violating the DVPO.  <u>See</u> N.H. Rev. Stat. Ann. ("RSA")

173-B:9 ("A person shall be guilty of a class A misdemeanor if

such person knowingly violates a protective order").  Plaintiff

---

[4] Plaintiff does not explain how Jessica qualifies as a "state
actor" for purposes of the federal constitutional claims.  He
argues that she "lured" plaintiff to Hampstead and "contacted
the police, . . . which ultimately led to his false arrest."
Doc. no. 36-1, at 12.  He does not, however, support his
argument with citation to controlling authority or with
analysis.  Nevertheless, the court assumes, without deciding,
that Jessica was a state actor.

[5] It appears from plaintiff's brief that he is no longer pursuing
an excessive force claim against the Sandown defendants for the
too-tight handcuffs.  To the extent he is, the court holds, as a
matter of law, that Officer Pica did not use excessive force.
This court has already held that the Hampstead police – who
placed the cuffs on plaintiff -- are not liable for excessive
force because the discomfort was brief and did not cause serious
or lasting injury.  Officer Pica, therefore, is also not liable
for using excessive force.  In fact, his involvement was
actually beneficial to plaintiff, in that he loosened the cuffs
at plaintiff's request.

posits that there was no probable cause to arrest and detain him because the validity of the DVPO was, at the time, uncertain, and thus, plaintiff could not have knowingly violated it.  The argument is without merit.

Plaintiff was arrested and detained pursuant to a warrant issued by an independent and objective justice of the peace.  A facially valid warrant generally precludes an arrestee from prevailing on a Section 1983 claim for false arrest.  Williamson v. Curran, -- F.3d --, 2013 WL 1338038, at *8 (7th Cir. April 4, 2013).  Nevertheless, "'[t]here was (and still is), . . . a recognized exception for situations where officers responsible for bringing about an unlawful arrest knew that the arrest warrant had issued without probable cause.'"  Id. (quoting Juriss v. McGowan, 957 F.2d 345, 350-51 (7th Cir. 1992)).  See also Miller v. Kennebec Cnty. Sheriff's Dept., 54 F.3d 764, 1995 WL 281644, at *2 (1st Cir. May 12, 1995)(unpublished table decision) ("The allegation that the warrant was issued by a Justice of the Peace does not render Miller's legal theory baseless. 'Judicial approval of a warrant cannot serve as an absolute bar to the § 1983 liability of the officer who obtained the warrant.'") (quoting Briggs v. Malley, 748 F.2d 715, 721 (1st Cir. 1984), aff'd, 475 U.S. 335 (1986).).  Although not entirely clear, plaintiff seems to argue that there is a

question for the jury regarding this exception, i.e., whether

the officers involved in securing the warrant (Corporal Sable)

and carrying out the arrest and detention (Officer Pica) knew

that probable did not exist.[6]

   "A police officer has probable cause when, at the time of

the arrest, the 'facts and circumstances within the officer's

knowledge . . . are sufficient to warrant a prudent person, or

one of reasonable caution, in believing, in the circumstances

shown, that the suspect has committed . . . an offense.'"

Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009)

(quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)).  The

undisputed facts here establish that probable cause existed to

believe that plaintiff had knowingly violated the DVPO.

   Despite plaintiff's professed confusion about whether the

DVPO was still in effect at the time of his arrest, the

protective order did not, in actuality, cease to be enforceable

during the relevant time period.  That the officers did not

share plaintiff's belief that the family court's temporary order

superseded the DVPO, does not change the fact that the DVPO

remained valid at all relevant times.  And although Corporal

Sable knew that plaintiff had expressed to Chief Gordon, in

April, his view that the DVPO was no longer in effect (see Sable

---

[6] Plaintiff has not named Corporal Sable as a defendant.

Warrant Aff., doc. no. 31-12), Corporal Sable also knew that
plaintiff had been informed by Chief Gordon during the same
April conversation that the DVPO's status in the law enforcement
data base had not changed, and that plaintiff would, therefore,
be subject to arrest if he had contact with Jessica.  See id.

And yet, plaintiff continued to contact Jessica numerous
times, including in excess of 80 texts to her cell phone in a
single day.  Although plaintiff was ultimately acquitted of the
charge of knowingly violating the DVPO, neither Corporal Sable
nor Officer Pica had "a standing obligation to investigate" the
nuances of what plaintiff understood or failed to understand
"before finding probable cause."  Acosta v. Ames Dept. Stores,
Inc., 386 F.3d 5, 11 (1st Cir. 2004).  See also Cox v. Hainey,
391 F.3d 25, 34 (1st Cir. 2004)(because "the practical
restraints on police in the field are greater with respect to
ascertaining intent . . the latitude accorded to officers
considering the probable cause issue in the context of mens rea
crimes must be correspondingly great.").

The court finds, therefore, as a matter of law, that "a
prudent person, or one of reasonable caution," would believe,
"in the circumstances shown," that plaintiff had knowingly
violated the DVPO.  Holder, 585 F.3d at 504.  Summary judgment
in favor of Officer Pica, the Sandown Police Department, and

Jessica Gallant on plaintiff's Section 1983 claims for unlawful arrest and false imprisonment is, therefore, warranted.

## II.  Malicious Prosecution

Plaintiff's Section 1983 claim for malicious prosecution is premised on the allegation that there was no probable cause for prosecuting him for knowingly violating the DVPO.  For the same reasons the defendants are entitled to summary judgment on the Section 1983 unlawful arrest and false imprisonment claims, they are entitled to summary judgment on the Section 1983 claim for malicious prosecution.

## III. Procedural Due Process Claim Against The Town of Sandown

As noted, plaintiff is pursuing his procedural due process claim only against the Sandown Police Department.  He claims that the Town, in issuing and threatening to enforce the Notice of Trespass, "depriv[ed] him of his real property without any opportunity to be heard."  Am Compl., doc. no. 16, par. 51.

To prevail on a procedural due process claim under Section 1983, the plaintiff must "establish that [he] (1) had a property interest of constitutional magnitude and (2) was deprived of that property interest without due process of law."  Clukey v. Town of Camden, -- F.3d--, 2013 WL 2158654, at *2 (1st Cir. May 21, 2013).  "To resolve" what process is due, courts "use the

13

familiar test laid out" in Mathews v. Eldridge, 424 U.S. 319

(1976).  Id. at *7.  Under the Mathews test, the court must

balances several factors: "the private interest that will be

affected by the official action; the risk of an erroneous

deprivation of such interest through the procedures used, and

the probable value, if any, of additional or substitute

procedural safeguards; and finally, the Government's interest,

including the function involved and the fiscal and

administrative burdens that the additional or substitute

procedural requirement would entail."  Id.

In his brief, plaintiff argues only one point relating to

his due process claim: that he has a protectable property

interest in the use of the marital home.  He does not discuss

the factual or legal bases for his allegation that he was

deprived of some process due to him, nor has he identified what

that process should have been.  Indeed, he makes no attempt to

discuss even the basic elements of a procedural due process

claim, let alone address the more complex balancing test of

Matthews.

In short, plaintiff has not carried his burden to identify

disputed facts that would be material to his due process claim,

nor has he supportably argued that he is entitled to judgment as

a matter of law.  See generally Rocafort v. IBM Corp., 334 F.3d

14

115, 122 (1st Cir. 2003)("[A] party has a duty 'to incorporate all relevant arguments in the papers that directly address a pending motion.' . . . This duty includes . . . presenting applicable legal authority. . . . It also includes explaining arguments 'squarely and distinctly.'")(citations omitted). Accordingly, the Sandown Police Department is entitled to summary judgment in its favor on plaintiff's due process claim.

IV.  State Law Claims

Summary judgment being granted as to all federal claims, the court declines to exercise supplemental jurisdiction over the state law claims asserted in the complaint. See 28 U.S.C. § 1367(c).  See also Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).

**Conclusion**

For these reasons, the summary judgment motions of defendants Jessica Gallant (doc. no. 33) and Officer William Pica and the Sandown Police Department (doc. no. 31), are granted as to all federal claims.  Plaintiff's discovery motion (doc. no. 46) is denied as moot.  The case, which is now comprised only of state law claims, is remanded to the New Hampshire Superior Court (Rockingham County).  See 28 U.S.C. § 1447(c).

15

The Clerk of the Court shall enter judgment in accordance with this order.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

May 31, 2013

cc:   Christine Woodman Casa, Esq.
      Brian J.S. Cullen, Esq.
      Daniel J. Mullen, Esq.
      Tony E. Soltani, Esq.